UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILFORD ROBERTS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-6198** |
| **S.W. MCCAIN, WARDEN** | **SECTION "A"(2)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

### I.     FACTUAL BACKGROUND

The petitioner, Wilford Roberts, is a convicted inmate currently incarcerated in the Raymond Laborde Correctional Center, in Cottonport, Louisiana.[2] On July 13, 2009,

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 4.

Roberts was indicted by an Orleans Parish grand jury for the second degree murder of George Davis.[3] The Louisiana Fourth Circuit Court of Appeal summarized the facts determined at trial in relevant part as follows:

> On the evening of April 17, 2009, Mitchell Armour was driving down the 3300 block of North Galvez Street when he noticed Roberts and the victim fighting on the adjacent sidewalk. Mr. Armour described the victim as a "little bitty fragile old man." The witness noted that Roberts, weighing close to 240 pounds, was taller and younger than the victim. When he saw the victim hit the ground, Mr. Armour called 9-1-1 and reported that the victim appeared to be seriously injured. Roberts kicked the victim in the chest or head while the victim was on the ground. Two men on the scene pulled Roberts away from the victim. Mr. Armour learned a few days later that the victim had died.
> Mr. Kenneth Augustine testified that he knew the victim for years from the neighborhood and that he knew Roberts as "Wop." The witness identified a picture of the victim and Roberts. Mr. Augustine was across the street from the scene when his attention was drawn to the sound of the victim and Roberts fussing. Though he could not hear all of the argument, Mr. Augustine said that the victim and Roberts were arguing over wine. Roberts wanted some of the victim's wine, and the victim refused to give him any. The witness then saw the victim stagger and fall into the street at which time Roberts kicked and hit the victim in his head with a 2x4 board. Mr. Augustine thought the victim was dead because of the vicious attack waged by Roberts. Augustine went to the victim's aid, and a woman pulled the victim from the street. The victim was alive. By that time, people gathered at the scene, and the police arrived and took Roberts into custody. The police officer put the board into the trunk of his vehicle.
> NOPD Officer Roderick Carey testified that he arrested Roberts on April 17, 2009, for aggravated battery. When Cary arrived at the scene, he noticed the unresponsive victim lying on the sidewalk suffering from what appeared to be head trauma. The officer spoke to Mr. Augustine who told him what had occurred and identified Roberts as the assailant. Carey also noted a witness on the scene named "Keith." Officer Carey confiscated the 2x4 board allegedly used in the attack and entered into the Central Evidence and Property. Carey testified that Roberts stood 6'4" and weighed 256 pounds while the victim was about 5'7", weighing 125-130 pounds. When the victim died a few days after the attack, the homicide division took over the case.

---

[3]St. Rec. Vol. 1 of 4, Indictment, 7/13/09.

2

State v. Roberts, 57 So.3d 617, 2011 WL 9160372, at *2 (La. App. 4th Cir. 2011) (Table, Text in Westlaw); State Record Volume 2 of 4, Louisiana Fourth Circuit Opinion, 2010-KA-1091 c/w 2010-K-1299, pages 3-4, February 16, 2011.

Roberts was tried before a jury on March 29, 2010, and found guilty of the lesser offense of manslaughter.[4] At an April 12, 2010, hearing, the state trial court denied Roberts's motions for new trial and for post-verdict judgment of acquittal.[5] After waiver of legal delays, Roberts was sentenced that same day to serve 21 years in prison.[6] Roberts also entered a not guilty plea to the State's multiple offender bill.[7]

At a July 30, 2010, hearing the state trial court adjudicated Roberts a third offender and resentenced him to serve 30 years in prison.[8]

On direct appeal to the Louisiana Fourth Circuit, appointed counsel asserted a single claim that the state trial court erred in denying the motion for post-verdict judgment of acquittal because the evidence failed to prove that the killing was not

---

[4]St. Rec. Vol. 1 of 4, Trial Minutes (3 pages), 3/29/10; St. Rec. Vol. 3 of 4, Trial Transcript, 3/29/10.

[5]St. Rec. Vol. 1 of 4, Sentencing Minutes, 4/12/10; Motion for New Trial and for Post-Verdict Judgment of Acquittal, 4/12/10; Motion for Post-Verdict Judgment of Acquittal, 4/12/10; Trial Court Order, 4/12/10; St. Rec. Vol. 3 of 4, Sentencing Transcript, 4/12/10.

[6]St. Rec. Vol. 1 of 4, Sentencing Minutes, 4/12/10; St. Rec. Vol. 3 of 4, Sentencing Transcript, pp. 3-4, 4/12/10

[7]St. Rec. Vol. 1 of 4, Sentencing Minutes, 4/12/10; St. Rec. Vol. 3 of 4, Sentencing Transcript, 4/12/10; Multiple Bill, 4/12/10.

[8]St. Rec. Vol. 1 of 4, Multiple Bill Hearing Minutes, 7/30/10. A second copy of the Multiple Bill was filed at the hearing. St. Rec. Vol. 1 of 4, Multiple Bill, 7/30/10.

committed in self-defense.[9] In a consolidated writ application filed by the State, the State argued that the state trial court erred in finding Roberts a third offender when the evidence proved that he was a fourth felony offender.[10]

The Louisiana Fourth Circuit affirmed the conviction on February 16, 2011, finding no merit in Roberts's claim.[11] The court, however, granted the State's writ application, vacated the multiple offender sentence and remanded the matter for the state trial court to resentence Roberts as a fourth felony offender. The state trial court complied with this order on April 1, 2011, and resentenced Roberts to serve 40 years in prison as a fourth felony offender.[12]

The Louisiana Supreme Court denied Roberts's related writ application on September 30, 2011, without stated reasons.[13] His conviction became final ninety (90) days later on December 29, 2011, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality

---

[9]St. Rec. Vol. 2 of 4, Appeal Brief, 2010-KA-1091, 8/31/10.

[10]St. Rec. Vol. 4 of 4, 4th Cir. Writ Application, 2010-K-1299, 9/14/10; 4th Cir. Order, 2010-K-1299, 9/24/10; see also, Response Brief, 2010-KA-1091, 10/22/10.

[11]Roberts, 2011 WL 9160372, at *1; St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2010-KA-1091 c/w 2010-K-1299, 2/16/11.

[12]St. Rec. Vol. 1 of 4, Minute Entry, 4/1/11.

[13]State v. Roberts, 71 So.3d 280 (La. 2011); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2011-KO-0511, 9/30/11; La. S. Ct. Writ Application, 11-KO-0511, 3/14/11; St. Rec. Vol. 2 of 4, La. S. Ct. Letter, 2011-KO-511, 3/14/11.

determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On March 2, 2012, the state trial court received a motion for production of documents from Roberts.[14]  On May 15, 2012, he sought mandamus relief from the Louisiana Fourth Circuit concerning his document request, and the matter was transferred to the state trial court for consideration.[15]  The state trial court denied Roberts's motion for production of documents on July 27, 2012.[16]  His second application for writ of mandamus related to his document request was denied by the Louisiana Fourth Circuit on September 19, 2012, in light of the trial court's ruling.[17]

Eleven months later, on August 20, 2013, almost 20 months after his conviction became final, Roberts signed and submitted to the state trial court an application for post-conviction relief and memorandum in support asserting three grounds for relief:[18] (1) The State failed to present sufficient evidence to disprove his claim of self-defense. (2) The state trial court erred by denying his motion to suppress the evidence. (3) The

---

[14] St. Rec. Vol. 1 of 4, Minute Entry, 3/2/12.

[15] St. Rec. Vol. 4 of 4, 4th Cir. Order, 2012-K-0755, 5/29/12; 4th Cir. Mandamus Writ Application, 2012-K-0755, 5/21/12 (dated 5/15/12).

[16] St. Rec. Vol. 1 of 4, Minute Entry, 7/27/12.

[17] St. Rec. Vol. 4th Cir. Order, 2012-K-1251, 9/19/12; Motion to Enforce (filed as a mandamus writ application), 2012-K-1251, 8/22/12.

[18] St. Rec. Vol. 1 of 4, Application for Post-Conviction Relief, 8/26/13 (dated 8/20/13).

state trial court erred by not instructing the jury on the elements of justifiable homicide. Following a mandamus order from the Louisiana Fourth Circuit, the state trial court denied the application for post-conviction relief on January 8, 2015, and a copy of the ruling was sent to Roberts on October 5, 2015.[19]

On April 6, 2016, the Louisiana Fourth Circuit denied Roberts's writ application on the showing made, noting that the self-defense issue was found to lack merit on direct appeal.[20] On May 26, 2017, the Louisiana Supreme Court denied Roberts's related writ application, holding that the self-defense claims were repetitive under La. Code Crim. P. art. 930.4(A). The court also held that Roberts did not establish his ineffective assistance of counsel claim under Strickland v. Washington, 466 U.S. 668 (1984).[21]

### III. FEDERAL HABEAS PETITION

On July 5, 2017, after correction of certain deficiencies, the clerk of court filed Roberts's federal habeas corpus petition in which he asserts the following grounds for

---

[19]St. Rec. Vol. 1 of 4, Minute Entry, 1/8/15; St. Rec. Vol. 4 of 4, 4th Cir. Order, 2014-K-1196, 11/10/14; 4th Cir. Mandamus Writ Application, 2014-K-1196, 10/29/14 (dated 9/29/14). Roberts's second mandamus application was granted in part only to direct that he be sent a copy of the state trial court's ruling on his post-conviction application. St. Rec. Vol. 4 of 4, 4th Cir. Order, 2015-K-0792, 8/6/15; 4th Cir. Mandamus Writ Application, 2015-K-0792, 7/27/15 (dated 7/10/15).

[20]St. Rec. Vol. 4 of 4, 4th Cir. Order, 2016-K-0270, 4/6/16; St. Rec. Vol. 4 of 4, 4th Cir. Writ Application, 2016-K-0270, 3/21/16 (dated 3/2/16).

[21]State ex rel. Roberts v. State, 220 So.3d 715 (La. 2017); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2016-KH-0737, 5/26/17; La. S. Ct. Writ Application, 16-KH-737, 4/21/16 (dated 4/13/16); St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 2016-KH-737, 4/22/16.

relief:[22]  (1) The state trial court erred by denying his application for post-conviction relief based on the claim of self-defense.  (2) He was denied effective assistance of counsel when counsel failed to conduct a pretrial investigation to support a self-defense theory.  (3) The state trial court erred in failing to instruct the jury on all possible responsive verdicts.

The State filed a response in opposition to Roberts's petition asserting that it was not timely filed under federal law.[23]  Roberts filed a reply to the State's opposition memorandum asserting that his petition should be considered timely and reviewed on the merits.[24]

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[25] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[22]Rec. Doc. No. 4.

[23]Rec. Doc. No. 17.

[24]Rec. Doc. No. 18.

[25]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Roberts's petition, which, for reasons discussed below, is deemed filed in a federal court on June 22, 2017.[26] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts and the record establishes that Roberts's federal petition was not timely filed. Roberts's federal petition should be dismissed for that reason.

IV.     STATUTE OF LIMITATIONS

The AEDPA requires that a Section 2254 petition must ordinarily be filed within one year of the date the conviction became final.[27] Duncan v. Walker, 533 U.S. 167,

---

[26]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Roberts's deficient petition on June 26, 2017. The corrected petition was entered July 5, 2017, and the case was opened when he paid the filing fee on August 16, 2017. Roberts deficient petition was dated June 22, 2017, which is the earliest date appearing in the record on which he could have submitted the pleadings to prison officials for mailing to a federal court. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002).

[27]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.     the date on which the judgment became final by the conclusion of direct review

8

179-80 (2001). Roberts's conviction became final on December 29, 2011, which was ninety (90) days after the Louisiana Supreme Court denied his post-appeal writ application. Applying Section 2244 literally, Roberts had one year from finality of his conviction, until December 28, 2012,[28] to file his federal habeas corpus petition, which he did not do. His petition must be dismissed as untimely, unless the one-year statute of limitations was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that AEDPA's one-year statute of limitations period in Section 2244(d)(1) may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-

---

or the expiration of the time for seeking such review;
B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

[28]2012 was a Leap Year with 29 days in the month of February. Therefore, the last day of the one-year limitations period fell on December 28, 2012. Even if the court were to consider the December 31, 2012, as the last day, it would make no difference in finding that Roberts's federal petition was not timely filed under the AEDPA.

Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin, 310 F.3d at 848.

Roberts has asserted no reason, and I can find none, that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled in his case. The record does not establish circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent to warrant equitable tolling in this case. See Holland v. Florida, 560 U.S. 631, 651-54 (2010) (equitable tolling would be warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests timely to file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was

filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that, because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed by a prisoner. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

In Roberts's case, the one-year AEDPA statute of limitations period began to run on December 30, 2011, the day after his conviction became final, and did so for 365 days, until December 28, 2012, when it expired. Roberts had no properly filed application for state post-conviction relief or other collateral review pending during that

time period to have provided him any tolling of the AEDPA one-year statute of limitations period. His first application for post-conviction relief or other collateral review was not filed until August 20, 2013, which was almost eight months <u>after</u> the AEDPA one-year statute of limitations period expired. He is not entitled to tolling for a state court filing made <u>after</u> the expiration of the AEDPA limitations period. See <u>Scott v. Johnson</u>, 227 F.3d 260, 263 (5th Cir. 2000) (state application for habeas corpus relief filed after limitations period expired does not toll the limitations period).

In addition, Roberts's unsuccessful attempts during that time period to obtain copies of state court record or other documents did <u>not</u> constitute a request for post-conviction relief or other collateral review for purposes of the AEDPA tolling calculation. See <u>Osborne v. Boone</u>, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); <u>Brown v. Cain</u>, 112 F. Supp.2d 585, 587 (E.D. La. 2000), <u>aff'd</u>, 239 F.3d 365 (5th Cir. 2000); <u>Gerrets v. Futrell</u>, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); <u>Jones v. Johnson</u>, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather support and transcripts); <u>Grayson v. Grayson</u>, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling). The one-year AEDPA limitations period was <u>not</u> interrupted by Roberts's document production requests.

14

Therefore, under the mailbox rule, Roberts's federal petition, deemed filed on June 22, 2017, was more than four years and five months after the AEDPA one-year statute of limitations expired on December 28, 2012. His federal petition was <u>not</u> timely filed and must be dismissed with prejudice for that reason.[29]

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Wilford Roberts's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of

---

[29]The United States Supreme Court decision in <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012), is not relevant to the timeliness of this federal petition. In <u>Martinez</u>, the Court held that a <u>procedural bar</u> imposed by <u>state courts</u> "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" <u>Trevino v. Thaler</u>, 133 S. Ct. 1911, 1912 (2013) (quoting <u>Martinez</u>, 566 U.S. at 13). Roberts's ineffective assistance of counsel claim was not subject to a state court imposed procedural bar. In addition, the decisions in <u>Martinez</u> and <u>Trevino</u> do <u>not</u> address or provide an excuse for untimely filing of a federal habeas petition. See <u>Arthur v. Thomas</u>, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the <u>Martinez</u> rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); <u>Smith v. Rogers</u>, No. 14-0482, 2014 WL 2972884, at *1 (W.D. La. Jul. 2, 2014); <u>Falls v. Cain</u>, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report and Recommendation). <u>Martinez</u> and <u>Trevino</u> also do <u>not</u> constitute new rules of constitutional law made retroactive on collateral review to start a new one-year statute of limitations period under the AEDPA. See <u>In re Paredes</u>, 587 F. App'x 805, 813 (5th Cir. Oct. 25, 2014) (". . . the Supreme Court has not made either <u>Martinez</u> or <u>Trevino</u> retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); <u>Adams v. Thaler</u>, 679 F.3d 312, 322 n.6 (5th Cir. 2012). Neither <u>Martinez</u> nor <u>Trevino</u> provide equitable or statutory relief from petitioner's untimely filing under the AEDPA.

15

plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[30]

New Orleans, Louisiana, this \_\_\_\_4th\_\_\_\_ day of May, 2018.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[30]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.